IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CT-03088-M

| | | |
|---|---|---|
| JOHN SCOTT HUDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| HYGIENIST TUCKER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This cause is before the court on defendant's motions seeking summary judgment, Mot. [D.E. 31], and to seal a proposed sealed document, Mot. [D.E. 36]. For the reasons discussed below, the court grants these motions.

Relevant Procedural History:

On March 7, 2022, John Scott Hudson ("plaintiff"), a state inmate proceeding without prepayment of fees, filed *pro se* a verified complaint under 42 U.S.C. § 1983. See [D.E. 1, 2, 8]. Plaintiff subsequently moved to amend his complaint. Mot. [D.E. 6].

On December 7, 2022, the court granted plaintiff's motion to amend the complaint, conducted its initial review of the amended complaint, allowed to proceed plaintiff's Eighth Amendment claim that Hygienist Tucker ("defendant") was deliberately indifferent to his serious medical needs when she delayed his needed treatment by removing him from the dental treatment list merely because he was "in the hole," but dismissed without prejudice the remaining claims and defendants. See Order [D.E. 9].

On April 4, 2023, defendant answered the complaint. Answer [D.E. 13].

On January 15, 2024, defendant filed a motion for summary judgment, Mot. [D.E. 31], a memorandum in support [D.E. 32], a statement of material facts [D.E. 33], an appendix [D.E. 34], a proposed sealed document [D.E. 35], and a motion to seal, Mot. [D.E. 36]. Plaintiff did not object to this motion to seal, and the court finds that the interest in preserving confidentiality of plaintiff's medical records outweighs the public interest in disclosure. See Doe v. Public Citizen, 749 F.3d 246, 265 (4th Cir. 2014); Ashcraft v. Conoco, Inc., 218 F.3d 288, 302 (4th Cir. 2000).

Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff about this motion for summary judgment, the consequences of failing to respond, and the response deadline. [D.E. 37].

On February 15, 2024, plaintiff filed a response in opposition with a statement of facts, [D.E. 38], a memorandum [D.E. 38-1], an appendix [D.E. 38-2], and a "declaration," [D.E. 38-2].[1]

Statement of Facts

The facts are disputed as noted. "The North Carolina Department of Public Safety ("DPS") Health Policy maintains Health and Wellness policies relating to dental treatment." See Def.'s Stmt. Mat. Facts. [D.E. 33] at ¶3. Section TX-V-6 outlines dental treatment provided to inmates, noting, *inter alia*: "Offenders receive the appropriate level of care according to the time remaining before their projected release date when they request treatment"; "Waiting lists may be maintained, as needed"; "Offenders are allowed level I care, regardless of length of incarceration, which includes: initial screenings and provisional treatment plans, extractions and other medically necessary oral surgery procedures, emergency medical treatment, caries control with appropriate

---

[1] Although he labels this filing a "declaration," it was not sworn under penalty of perjury. See 28 U.S.C. § 1746 (providing that a declaration under penalty of perjury can satisfy a requirement for a sworn declaration). Accordingly, it is not considered by the court.

2

restorative materials, anterior and premolar endodontics when appropriate and there is sufficient time to complete the procedure, gross cavitron scaling and defragmentation, denture repairs when time permits, palliative treatment for pain relief, and complete or partial dentures when necessary and time permits"; "Offenders are allowed Level II care if they have 18 months or more left of their sentence"; "Level II care includes: All Level I care, complete dental exams and development of treatment plans, prophylaxis and periodic exam as determined by professional judgment, restorative procedures (fillings), full and partial dentures, non-surgical periodontal therapy, and other treatment authorized by the Dental Director"; "Dental services provided to offenders shall be under the direction of a duly licensed dentist"; and "Treatment is rendered with the consent of the Offender."   Id. at ¶¶4–11 (citing Def.'s App., Ex. 1 [D.E. 34-2] at 1–7).

"DPS maintains policy on preventative dental care found at TX-V-5."  "Offenders are provided dental tools of toothpaste, toothbrushes, and if the facility permits, floss."   Id. at ¶12 (citing Def.'s App., Ex. 1 [D.E. 34-2] at 8).

"DPS also maintains policy for providing access to dental care found at TX-V-4," which provides, _inter alia_: "Emergency dental treatment is available on a 24-hour basis and concerns such issues as: facial fractures, avulsed teeth, excessive bleeding, acute abscess, and other acute conditions where treatment is required to prevent death or severe disability"; "When a dentist is not available at the facility, outside medical treatment will be sought"; "Dental complaints are addressed through the regular sick-call procedures and nurses will direct dental issues to the facility dental clinic"; "Dental issues will be triaged"; "Offenders assigned to Restrictive Housing ("RH") for fewer than 90 days are limited to Level I care"; "Offenders assigned to RH must have the dentist arrange with custody staff to be seen"; "The dentist will use professional judgement to

3

determine if an offender should be brought from RH to the dental clinic"; "RH offenders shall not be eligible for routine prophylaxis until after six months in this assigned housing"; and "Oral hygiene instruction and personal responsibility for self-care should be emphasized" for offenders on RH. Id. at ¶¶13–21 (citing Def.'s App., Ex. 1 [D.E. 34-2] at 9–11).

Defendant, a dental hygienist, worked at Tabor C.I. at relevant times and sees inmates according to TX-V-4 and TX-V-6. Id. at ¶39, 42. Her duties are to review medical history, expose radiographs, clean teeth, provide hygiene instructions, and schedule hygiene appointments, *i.e.* cleanings, which inmates can request every six months. Id. at ¶¶40–41, 49. Dental hygienist work is conducted under dentist supervision, dental treatments other than hygiene are conducted by the Dentist and Dental Assistant, and, for other dental concerns, inmates must put in a sick-call request, and the Dental Assistant schedules the appointment. Id. at ¶¶42, 50, 52; accord Def.'s App., Ex. 2, Tucker Decl. [D.E. 34-4] at ¶¶2, 4 (declaring, *inter alia*: she works under the supervision of a dentist; she has been a hygienist for thirty-six years; her duties are to take a patient's medical history, expose radiographs, clean teeth, and provide hygiene instructions, and that she "only schedule[s] dental hygiene appointments, which are cleanings.").

While in state custody, and prior to being held at Tabor C.I., plaintiff received dental treatment, including root canals of teeth #9 and #10. Def.'s Stmt. Mat. Facts. [D.E. 33] at ¶23; see Pl.'s Resp. [D.E. 38] at 2–6 (stating, *inter alia*: on Feb. 15, 2018, Dr. Goglia performed root canals on #9 and #10 at Central Prison with temporary fillings and cotton pellets, but three other cavities were not treated; Dr. Ammons instructed him about a follow-up visit for permanent fillings for #9 and #10 and fillings for other cavities; in the Spring of 2018, he requested dental follow-up at Columbus C.I. but was "advised by nursing staff that inquiring about medical appointment trips

4

and treatment was a threat to prison security [sic]"; as "they were aware of his needs [sic]," he "waited patiently to be seen," but the "ball was dropped concerning scheduling with regard to dental [sic], causing the cotton pellets and temporary fillings to stay in the plaintiff's mouth for almost two (2) years"); see also Def.'s App., [D.E. 35-1] at 74–97 (Pl.'s dental records).

After his transfer to Tabor C.I., plaintiff's temporary fillings and cotton pellets from his root canals detached in October 2019, causing him pain and discomfort, and he submitted a sick-call request as to this issue on October 8, 2019. See Pl.'s Resp. [D.E. 38] at 8.

On October 9, 2019, plaintiff had a visit with Dental Assistant ("D.A.") Robin Herring and explained that he had received the root canals in February 2018, and that Dr. Ammons had told him that he would be seen by a dentist to have the cotton pellets removed, the permanent fillings done, and his other cavities addressed. Id. at 8–9. D.A. Herring informed plaintiff that she would schedule him with an appointment to be seen by the dentist. Id. at 9; see Def.'s App., [D.E. 35-1] at 69 (Oct. 9, 2019, Sick Call Triage encounter performed at Dental Clinic by D.A. Herring, scheduling plaintiff on the "DDS List" for "Root Canal fills #9/#10).

On November 12, 2019, Dr. Howard James removed temporary fillings from #9 and #10, completed surface composite of #9 and #10, removed a cotton pellet from #9, and instructed plaintiff how to place a sick call for additional dental work. Def.'s Stmt. Mat. Facts. [D.E. 33] at ¶24; see Def.'s App., [D.E. 35-1] at 70 (Nov. 12, 2019, "Dental Routine Care, Routine Treatment" noting, *inter alia*: "#9-L, One Surface Composite, Completed" and "#10-L One Surface Composite, Completed"; as "comments," "Removed temporary filling from 9/10 and cotton pellet from tooth #9. Placed L-pop and Nano-Hyprid composite A3. Patient did well. 1PA of 9-10 taken to eval RCT/apicoectomy healing. Discussed w/ pt the need to place a sick call for work

5

he knows needs to be completed"; as disposition, "Follow-up at Sick Call as Needed"; and, as "patient education topics," "access to care," with Dr. James, and, as "outcome," "verbalizes understanding"); but see Pl.'s Resp. [D.E. 38] at 9–10 (stating, *inter alia*: Dr. James "discussed w/ pt the need to place a sick-call for work he knows needs to be completed," "explained that the root canal procedure should have been completed within 4 to 6 weeks after it was started but somehow scheduling for follow up treatment was missed," and "explained he would not address filling any cavities until the Plaintiff got his teeth cleaned again"; Plaintiff explained that he had "paid for services that had not been completed by dental and the three (3) cavities that remained from his [January 26, 2018,] visit with Dr. Ridha [needed to be] finished"; Dr. James "explained that he had reviewed plaintiff's dental records, and wasn't charging a co-pay for the work that he had done, but his cavities were nasty [sic], needed cleaning, and exam/x-rays so the plaintiff needed to submit a sick-call to have his teeth checked by the hygienist"; plaintiff submitted a sick call that same day; and plaintiff's "situation with teeth 9 and 10 became the talk of the small dental exam area at that time, telling his whole story to Dr. James, D.A. Herring, [defendant], another inmate, a D.A. helping Dr. James, [and Officer] Wyatt").

There is disagreement about what occurred on November 13, 2019. Compare Pl.'s Resp. [D.E. 38] at 10–11 (stating: defendant "took x-rays of the Plaintiff's teeth, discussed being seen to have his teeth cleaned, and [he] was told he had about ten (10) cavities that needed to be addressed"; defendant "explained he would be made a priority on her list but because of the both [sic] holiday seasons coming up, it might be after the first of the year before he would be seen"; defendant "had firsthand knowledge that the plaintiff had dental work that had been started and not completed"; and, "a notification was sent letting [him] know he was on a waiting list to be

6

seen"), with Compl. [D.E. 1] at 7, ¶12 ("Plaintiff was seen concerning this matter on 13th

November 2019 by Provider Herring, Robin, D.A."), and Def.'s Stmt. Mat. Facts. [D.E. 33] at ¶25

(stating, "On 11/13/2019, Plaintiff was added to the list for x-rays and an exam"), and Def.'s App.,

Ex. 2, Tucker Decl. [D.E. 34-4] at ¶¶5, 7 (declaring: "All dental diagnoses are made by the dentist";

and "I never told [plaintiff] that he had ten cavities, that would be diagnosing[,] and I cannot do

that."). The record supports defendant's statement and plaintiff's complaint, but not plaintiff's

response. See Def.'s App. [D.E. 35-1] at 72 (Nov. 12, 2019, sick-call request asking, "to have

'all' teeth checked, and have all cavities filled," with a Nov. 13, 2019, note by D.A. Herring,

stating, "DDS wt exam x-rays 0730 ym notification sent [sic]"); Compl. Attach. [D.E. 1-1] at 20

(Nov. 13, 2018, administrative note by D.A. Herring at sick-call triage dental clinic encounter

noting, "11/13/2019 - DDS List – Examxrays [sic]," with no co-pay required).

On March 1, 2021, plaintiff did not attend a hygiene appointment with defendant, but the

parties disagree if he was "unavailable." Compare Def.'s Stmt. Mat. Facts. [D.E. 33] at ¶¶26,

44–48, 53 (stating: inmates on Restrictive Housing ("RH") "have to be escorted by Custody Staff"

for appointments; "if for any reason Custody Staff is unavailable, then the inmate is not brought";

plaintiff was unavailable due to being on RH, and defendant noted he would be rescheduled), and

Def.'s App., Ex. 2, Tucker Decl. [D.E. 34-4] at ¶¶4, 6 (declaring, *inter alia*: a hygiene appointment

was scheduled on March 1, 2021, but he was unavailable" due to being on RH; she noted he would

be rescheduled; he was rescheduled for April 14, 2021; she "does not control whether an inmate

on RH attends their appointment"; it is her "understanding that all inmates on RH for disciplinary

purposes are not allowed dental cleanings, only emergency treatment"; "If an inmate is not brought

because they are on RH, then [she] marks them as unavailable and places them back on the list to

7

be seen"), with Pl.'s Resp. [D.E. 38] at 12 (stating, "for the purpose of the unfinished work[, he] was available"). The record supports defendant's statement. See Def.'s App. [D.E. 35-1] at 50 (Mar. 1, 2021, "Administrative Note encounter at Dental Clinic" by defendant, stating: as "Reason Not Done," "Unavailable"; as "Comments," "Offender transferred to restrictive housing. Not available to attend dental appointment. Will reschedule at later date.").

On April 14, 2021, plaintiff did not attend a hygiene appointment, and defendant listed him as "unavailable." Compare Def.'s Stmt. Mat. Facts. [D.E. 33] at ¶¶27, 54, and Def.'s App., Ex. 2, Tucker Decl. [D.E. 34-4] at ¶6 (declaring, *inter alia*: his March 1, 2021, hygiene appointment was rescheduled for April 14, 2021, but he was again unavailable and was rescheduled to April 19, 2021), with Pl.'s Resp. [D.E. 38] at 12 (stating, defendant "claims [he] was unavailable," "but gives no reason"); see Def.'s App. [D.E. 35-1] at 49 (Apr. 14, 2021, "Admin. Note encounter at Dental Clinic" by defendant, stating: as "Reason Not Done," "Unavailable"; as "Comments," "04/14/2021 1400 Offender was unavailable for dental hygiene appointment").

On April 19, 2021, defendant marked him as a hygiene appointment "no-show," but the parties dispute the circumstances. Compare Def.'s Stmt. Mat. Facts. [D.E. 33] at ¶¶28, 55–59, and Def.'s App., Ex. 2, Tucker Decl. [D.E. 34-4] at ¶4 (declaring: on Apr. 19, 2021, he "was marked as a no-show," meaning "he declined to attend his scheduled appointment"; before marking a no-show, defendant makes sure the inmate "received appointment notice"; "A no-show is different than unavailable because with a no-show, the inmate has the ability to attend, but does not"; "If the inmate is available, but does not show up, then [she] marks them as a no-show, and they have to submit a new sick-call request for a hygiene appointment" before they will be scheduled; and "It is not within the scope of [her] duties to remove patients from the appointment

8

list"), with Pl.'s Resp. [D.E. 38] at 12 (stating: "when an inmate refuses medical/dental treatment, which is a 'no show,' a medical treatment refuse form is brought to the inmate to sign, and if he does not sign then two staff sign, and it's filed"); see Def.'s App. [D.E. 35-1] at 48 (Apr. 19, 2021, "Administrative Note encounter at Dental Clinic" by defendant, noting: as "Reason Not Done," "No Show"; as "Comments," "04/19/2021 14:30 No show for dental hygiene appointment").

On August 17, 2021, D.A. Herring added plaintiff to the dental list due to pain. Def.'s Stmt. Mat. Facts. [D.E. 33] at ¶29; accord Def.'s App. [D.E. 35-1] at 47 (Aug. 18, 2021, sick-call triage encounter at Dental Clinic with D.A. Herring scheduling plaintiff on the DDS List for pain).

On August 24, 2021, plaintiff had a dental exam with defendant and Dr. Lemmons. Compare Compl. [D.E. 1] at 7–8, ¶¶13–15 (alleging, inter alia: "the dental department did not see him again until 8-24-2021 to have now one of his teeth with a cavity removed because the dentist then said it was past saving"; and "While being seen by [defendant], she reviewed her computer and stated the following, "You [plaintiff] had come up twice (2) to see her but she had removed me from the list because I was in the hole (seg.)"; and "The hole has nothing to do with medical treatment, in the hole an inmate is moved in restraints and to see the dental dept. you are seen in restraints"), and Pl.'s Resp. [D.E. 38] at 11–12 (stating: defendant informed him he was at this visit for an exam, x-rays, and to "upgrade his medical dental history"; he "again inquired about the unfinished dental work and was told by Defendant [ ] he need a lot more work done to his teeth"; defendant "took radiographs and explained to him that a lot of his cavities were between his teeth, showing about ten (10), but the dentist would explain in more detail"; and "tooth # 10 was added to the upgrade list also with the other two (2) cavities"), with Def.'s Stmt. Mat. Facts. [D.E. 33] at ¶¶30–31 (stating: defendant conducted a medical history and Dr. Lemmons "conducted a periodic

9

exam and oral cancer screen"; and "Plaintiff's records were noted for #10 surface composite treatment planned, same for #19, watch #31, 21, 5, 28, 13, 11, 29, 15, general hygiene discussed, planned extraction of #30," with completed Feb. 15, 2018, root canals in # 9 and #10 noted), and Def.'s App., Ex. 2, Tucker Decl. [D.E. 34-4] at ¶7 (declaring, *inter alia*: she "never told [plaintiff] that he had ten cavities, that would be diagnosing[,] and [she] cannot do that"; and "It is the Dentist who diagnoses cavities and develops treatment plans."); see Def.'s App., [D.E. 35-1] at 37–40 (Aug. 24, 2021, dental health history screen encounter with defendant circa 4:11 p.m. noting, *inter alia*, sensitive teeth and toothache, and that plaintiff was instructed "how to obtain medical, dental, and mental health care"); id. at 41–44 (Aug. 24, 2021, dental health history screen by Dr. Lemmons circa 2:58 p.m. noting, *inter alia*, sensitive teeth, bleeding gums, toothache, and decayed teeth, and that plaintiff was instructed "how to obtain medical, dental, and mental health care"); id. at 56–58 (Aug. 24, 2021, defendant periodic exam reflecting "bitewing X-rays" and "Periapical X-rays" done); id. at 59–60 (Aug. 24, 2021, "Dental Routine Care Routine Treatment" by Dr. Lemmons reflecting, *inter alia*: One surface composite planned for #10; Two surface composite planned for #19, watch for #31, #21, #5, #28, #13, #11, #29, and #15; oral hygiene instruction; planned non-surgical extraction of #30; noting the completed Feb. 15, 2018, root canals in # 9 and #10; "Oral cancer screening – WNL" [within normal limits]; "TMJ evaluation – WNL"; "Pt qualifies for hygiene under direction"; and, as "disposition," "Follow-up at Sick Call as needed").

On September 8, 2021, plaintiff declared an emergency and Dr. Horace Harris completed an extraction of tooth # 30. Def.'s Stmt. Mat. Facts. [D.E. 33] at ¶32; Def.'s App., [D.E. 35-1] at 54–55 (Sept. 9, 2021, "Dental Routine Care, Inmate Declared Emergency" noting tooth #30 extracted, prescribing Ibuprofen for pain, and, as "disposition, "follow-up at sick call as needed").

10

On September 9, 2021, D.A. Herring placed plaintiff on a list for cavity fillings. Def.'s Stmt. Mat. Facts. [D.E. 33] at ¶34; accord Def.'s App., [D.E. 35-1] at 45.

On October 12, 2021, defendant conducted a medical history and performed a hygiene examination, and Dr. Lemmons examined plaintiff. Compare Def.'s Stmt. Mat. Facts. [D.E. 33] at ¶¶35–36, 60–66, and Def.'s App., Ex. 2, Tucker Decl. [D.E. 34-4] at ¶7 (declaring: on Oct. 12, 2021, she provided "routine hygiene care"; he "was instructed how to obtain dental care"; although a hygienist sometimes works under HUD (*i.e.*, without immediate oversight by the dentist), "HUD was ordered removed" as Dr. Lemmons was present; Dr. Lemmons was responsible for addressing any issues with his dental treatment, and specifically with teeth #9 and #10; and "for any treatment plan suggested by Dr. Lemmons, [he] would need to place a sick-call request for dental treatment, which would be scheduled by the Dental Assistant, as it would be more than a hygiene issue"), with Compl. [D.E. 1] at 9, ¶¶18–19 (alleging: defendant cleaned his teeth "around the beginning of October 2021 and during this cleaning [defendant] informed the Plaintiff he now had ten (10) cavities"; and he "has complained to the hygienist that something is wrong with teeth 9 and 10, however, her response was you will be put on the waiting list and seen when your turn comes"); see also Def.'s App., [D.E. 35-1] at 28–32 (Oct. 12, 2021, dental history health noting sensitive teeth, toothache, and decayed teeth); id. 51–52 (Oct. 12, 2021, routine periodic exam noting: "HUD Ordered," "DDS present," dental cleaning with polish and fluoride; in comments, "Pt. does not floss"; and, as "education topics," "counseling, Oral hygiene instructions, taught flossing").

On March 23, 2022, Dr. Lemmons extracted plaintiff's tooth #13. See Def.'s Stmt. Mat. Facts. [D.E. 33] at ¶37; Def.'s App., [D.E. 35-1] at 22–23 (noting tooth #13 extraction, prescribing over-the-counter Ibuprofen for pain, and, as "disposition," "follow-up at sick call as needed).

11

On March 28, 2022, plaintiff was seen by D.A. Robin Herring. Def.'s Stmt. Mat. Facts. [D.E. 33] at ¶38; see Def.'s App., [D.E. 35-1] at 20–21 (Mar. 28, 2022, Sick Call Triage encounter at Dental Clinic scheduling plaintiff on both "DDS List - Fillings" and "DDS List -Extraction").

## Legal Standard:

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The moving party initially must demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

## Discussion:

First, plaintiff's claims against defendant in her official capacity are barred by the Eleventh Amendment unless the state has waived immunity. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 66, 71 (1989). Because North Carolina has not waived immunity, defendant is entitled to summary judgment on any official capacity claims. See Anderson, 477 U.S. at 249.

12

Next, to establish a prima facie claim that prison conditions violate the Eighth Amendment, a plaintiff must show "(1) that the deprivation of a basic human need was objectively sufficiently serious, and (2) that subjectively the officials acted with a sufficiently culpable state of mind." De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013) (cleaned up); see Scinto v. Stansberry, 841 F.3d 219, 225–26 (4th Cir. 2016); Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993).

The first prong requires the prisoner to show that "the deprivation of [a] basic human need was objectively sufficiently serious." Strickler, 989 F.2d at 1379 (emphasis and quotation omitted). "Only an extreme deprivation, that is, a serious or significant physical or emotional injury resulting from the challenged conditions, or substantial risk thereof, will satisfy the objective component of an Eighth Amendment claim challenging the conditions of confinement." De'lonta, 708 F.3d at 525 (quotation omitted); see Scinto, 841 F.3d at 225.

The second prong requires the prisoner to show that the prison official acted with deliberate indifference to the inmate's health or safety. See, e.g., Farmer v. Brennan, 511 U.S. 825, 834–40 (1994); De'lonta, 708 F.3d at 525. "[D]eliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835.

Deliberate indifference to a prisoner's serious medical need violates the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). "In order to establish a claim of deliberate indifference to a medical need, the need must be both apparent and serious, and the denial must be both deliberate and without legitimate penological objective." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999); see Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990) ("To establish that a health care provider's actions constitute deliberate indifference to a serious medical

13

need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."), overruled in part on other grounds by Farmer, 511 U.S. at 837.

When a prisoner alleges denial or delay of medical care, he must show the prison official knew of and disregarded an objectively serious condition, known medical need, or substantial risk of serious harm. Farmer, 511 U.S. at 837; Scinto, 841 F.3d at 225; De'lonta, 708 F.3d at 525; see Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (noting a deliberate indifference claim's subjective prong requires proof of "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by [the official's] action or inaction."). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "It is not enough that the [prison official] should have recognized" the objectively serious condition, medical need, or risk of harm. Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (emphasis omitted). Rather, plaintiff must show "actual knowledge of the risk of harm to the inmate[.]" Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (emphasis omitted). A prisoner's failure to give warning of, or protest exposure to, the risk does not conclusively show that a prison official lacked actual knowledge. See Makdessi v. Fields, 789 F.3d 126, 134 (4th Cir. 2015). However, "[a] prison official's subjective actual knowledge can be proven through circumstantial evidence[.]" Id. at 133. "[A]n injury might be so obvious that the factfinder could conclude that the guard did know of it because he could not have failed to know of it." Id.

Beyond such actual knowledge, the prison official "must also have recognized that his actions were insufficient to mitigate" the objectively serious condition, medical need, or risk of

14

harm. Iko, 535 F.3d at 241 (quotation and emphasis omitted); see Whitley v. Albers, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . ."), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010) (per curiam).

Deliberate indifference "sets a particularly high bar to recovery," Iko, 535 F.3d at 241, and mere negligence in diagnosis or treatment, without more, does not state a constitutional claim, see Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); Grayson, 195 F.3d at 695 ("Deliberate indifference is a very high standard–a showing of mere negligence will not meet it.").

Further, "where a deliberate indifference claim is predicated on a delay in medical care, [the Fourth Circuit has] ruled there is no Eighth Amendment violation unless 'the [treatment] delay *results* in some substantial harm to the patient,' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" Formica v. Aylor, 739 F. App'x 745, 755 (4th Cir. 2018) (per curiam) (unpublished) (quoting Webb v. Hamidullah, 281 F. App'x 159, 166–67 (4th Cir. 2008) (per curiam) (unpublished) (collecting cases)).

As noted above, the complaint and defendant's statement contradict plaintiff's statement that defendant treated him on November 13, 2019. Compare Pl.'s Resp. [D.E. 38] at 10, with Compl. [D.E. 1] at 7, ¶12, and Def.'s Stmt. Mat. Facts. [D.E. 33] at ¶25. The record supports defendants' statement, indicating that D.A. Herring placed plaintiff on the list for x-rays and exams on that date. See Compl. Attach. [D.E. 1-1] at 20 (Nov. 13, 2018, D.A. Herring admin. note); Def.'s App. [D.E. 35-1] at 72 (Nov. 13, 2019, D.A. Herring note); see also Jessup v. Barnes Grp., Inc., 23 F.4th 360, 367 (4th Cir. 2022) ("A genuine issue of material fact is not created where the

15

only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." (citation omitted)).

Although plaintiff states that defendant told him on November 13, 2019, that he had about ten cavities needing to be addressed, see Pl.'s Resp. [D.E. 38] at 10, defendant declares otherwise, see Def.'s App., Ex. 2, Tucker Decl. [D.E. 34-4] at ¶7 ("I never told [plaintiff] that he had ten cavities, that would be diagnosing[,] and I cannot do that."). The record supports defendant's declaration. See Def.'s App. [D.E. 35-1] at 26 (Pl.'s Mar. 24, 2022, sick call appointment request stating, "Need cavities filled approx. 10 now (Dr. Lemons [sic])."); id. at 59–60 (Aug. 24, 2021, "Dental Routine Care, Routine Treatment" by Dr. Lemmons noting multiple cavities); see also Scott, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); Bennett v. Reed, 534 F. Supp. 83, 86 (E.D.N.C. 1981) (providing, the court may generally rely on medical records concerning examination and treatment of the prisoner in determining whether prison officials are deliberately indifferent to a prisoner's serious medical needs), aff'd, 676 F.2d 690 (4th Cir. 1982).

Turning to the events of March 1, April 14, and April 19, 2021, as noted in the facts above, the record reflects that defendant marked plaintiff as unavailable for the first two of these missed hygiene appointments, and as a "no show" for the third. See Def.'s App. [D.E. 35-1] at 48–50.

Plaintiff argues, *inter alia*: defendant "has attempted to shadow her deliberate indifference by stating that on two (2) schedule[d] dental visits the Plaintiff was unavailable and the other he was a 'no show'"; his claim is that defendant "showed deliberate indifference by not seeing him to clean his teeth so Dr. James could complete the unfinished dental work" and, "after waiting

16

almost another two (2) years being removed from her list three (3) times"; "medical, dental, and custody use the term 'unavailable' for inmate's if 1) short staffed, 2) code one (1) no movement, 3) Hero system down, and 4) any other reason they deem just, with no input from the inmate"; "Also, no shows don't reflect that an inmate does not want to be seen"; "where custody controls the locks, neglect giving out appointment passes, and inmates being refused to be seen because they are late to the appointment because of [an] issue on the unit where custody has stopped movement"; "medical/dental have inmates to sign a refusal of treatment form, and if the inmate won't sign[,] then a ofc. and nursing/dental staff signs that the inmate refused so there's a record, not just staff saying an inmate refused or was a no show as [defendant] claims with the plaintiff[,] but there's 'no' refusal forms in this discovery [sic]." See Pl.'s Mem. [D.E. 38-1] at 5–6.

Defendant declares, *inter alia*: she only schedules dental hygiene appointments, *i.e.* cleanings; "dental treatment other than hygiene is conducted by the dentist and dental assistant"; "It is not within the scope of [her] duties to remove patients from the appointment list"; it is her "understanding that all inmates on RH [restrictive housing] for disciplinary purposes are not allowed dental cleanings, only emergency treatment"; RH inmates must be escorted by Custody Staff; if Custody Staff is unavailable and the inmate is not brought, she marks the inmate as unavailable and places the inmate back on the list to be seen; on March 1, 2021, plaintiff had a hygiene appointment scheduled, but he was "unavailable" due to being on restrictive housing and defendant noted he would be rescheduled; he also was "unavailable" on April 14, 2021, and was again rescheduled; on April 19, 2021, he was marked as a no-show, meaning "he declined to attend his scheduled appointment"; "Before marking an inmate as a no-show," defendant makes sure the inmate "received [the] appointment notice"; "A no-show is different than unavailable because with

17

a no-show, the inmate has the ability to attend, but does not"; and "When marked as a no-show, the inmate must put in another sick call before they will be scheduled." See Def.'s App., Ex. 2, Tucker Decl. [D.E. 34-4] at ¶¶4–6.

Contra plaintiff's statement that he was "available," Pl.'s Resp. [D.E. 38] at 12, the record supports defendant's declaration that, while on RH, he was not available for dental cleanings, see Def.'s App., Ex. 1 [D.E. 34-2] at 1–7 (TX-V-6, providing, as Level II care, *inter alia*, complete dental exam with radiographs and prophylaxis), 9–11 (TX-V-4, providing, *inter alia*: "Offenders assigned to Restrictive Housing ("RH") for fewer than 90 days are limited to Level I care"; and "Offenders assigned to RH must have the dentist arrange with custody staff to be seen").

Although the record does not contain a treatment refusal form on April 19, 2019, plaintiff merely speculates as to various reasons why he may have been marked a "no show." See Anderson, 477 U.S. at 252 (noting the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment); Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020) ("[C]onclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion."); Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (noting "neither '[u]nsupported speculation,' nor evidence that is 'merely colorable' or 'not significantly probative,' will suffice to defeat a motion for summary judgment" (internal citations omitted)).

Plaintiff also argues, *inter alia*: defendant had "firsthand knowledge that [his] initial visit to the dental department at Tabor was due to dental work that was not completed, but started on 29th January 2018 and 15th February 2018, not new dental problems or concerns"; "for whatever reason, [he] was not a priority to [defendant] to be seen, so the dentists could complete the work

18

started"; "It is assumed that [defendant] showed no diligence in seeing [him] in a minimum amount of time, but was placed generally on her list, because it was almost two (2) more years before he was seen for the tooth cleaning"; defendant "could have scheduled [him] a visit to have his teeth cleaned right after his visit with Dr. James on 12th November 2019"; he "was not in restricted housing all of 2020, the remaining of 2019, nor has [defendant] or [his] dental record reflect [sic] any attempts were made during these durations of time to schedule him an appointment to have the unfinished dental work completed"; and defendant "left [him] in pain and suffering as his teeth deteriorate, and he repeatedly has lost tooth after tooth." Pl.'s Mem. [D.E. 38-1] at 4–6.

These arguments all amount to claims about what defendant could or should have done to ensure plaintiff had more prompt dental treatment. See Koon v. North Carolina, 50 F.4th 398, 406 (4th Cir. 2022) ("It is not enough simply to point to what could or should have been done. That is the language of negligence. Deliberate indifference requires a 'deliberate or conscious choice' to ignore something."). As noted above, however, defendant declares the dentist or dental assistant provide dental treatment other than hygiene, see Def.'s App., Ex. 2, Tucker Decl. [D.E. 34-4] at ¶7, and the record does not indicate that defendant treated plaintiff before August 24, 2021, see Def.'s App., [D.E. 35-1] at 37–40, 56–58, or that plaintiff submitted any dental sick call requests between November 12, 2019, and August 14, 2021, see id. at 63, 72.

The record does not support an inference that the risk of injury to plaintiff due to either his hygiene appointments being rescheduled for "unavailability" on March 1 and April 14, 2021, or him being required to put in a sick call request after a "no show" on April 19, 2021, was so obvious that defendant must have known that risk. Cf. Makdessi, 789 F.3d at 133; see Wynn v. Mundo, 367 F. Supp. 2d 832, 837 (M.D.N.C.) ("Significantly, an 'error of judgment' on the part of prison

19

medical staff, or "inadvertent failure to provide adequate medical care, while perhaps sufficient to support an action for malpractice, will not constitute a constitutional deprivation redressable under § 1983." (citation omitted)), aff'd, 142 F. App'x 193 (4th Cir. 2005).

The record does not support an inference that plaintiff's lack of a dental hygiene appointment in March or April 2021 resulted in substantial harm or caused a marked exacerbation of his dental injury. Cf. Formica, 739 F. App'x at 755; Webb, 281 F. App'x at 166–67; accord Coward v. Clarke, No. 7:20CV00702, 2022 WL 1018407, at *9 (W.D. Va. Apr. 5, 2022), appeal dismissed, No. 22-6521, 2022 WL 19727389 (4th Cir. Nov. 29, 2022).

Although plaintiff argues defendant was deliberately indifferent in delaying his dental hygiene appointment because he needed his teeth cleaned before Dr. James could complete the unfinished dental work, a nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Stone v. Liberty Mut Ins. Co., 105 F.3d 188, 191 (4th Cir. 1997) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).

The court now turns to plaintiff's allegation that, during a dental hygiene treatment with defendant in October 2021, he was told he had ten cavities and he complained about teeth #9 and #10, but defendant's response was, "you will be put on the waiting list and seen when your turn comes." See Compl. [D.E. 1] at 9, ¶¶18–19.

Defendant declares, *inter alia*: on October 12, 2021, she provided plaintiff "routine hygiene care"; plaintiff "was instructed how to obtain dental care"; Dr. Lemmons was present and was responsible for addressing any issues with his dental treatment, and specifically with teeth #9 and #10; she "never told [plaintiff] that he had ten cavities, that would be diagnosing[,] and I cannot do that"; "dental treatment other than hygiene is conducted by the dentist and dental assistant";

20

and "for any treatment plan suggested by Dr. Lemmons, [he] would need to place a sick-call request for dental treatment, which would be scheduled by the Dental Assistant, as it would be more than a hygiene issue." See Def.'s App., Ex. 2, Tucker Decl. [D.E. 34-4] at ¶¶5, 7.

Here, the record reflects the dentist was present and generally supports defendants' declaration. See Def.'s App., [D.E. 35-1] at 51–52. Defendant's purported statements – informing plaintiff about cavities and that he would be put on a waiting list – are reasonable responses, not deliberate indifference. See Farmer, 511 U.S. at 844 (finding an official "who actually [knows] of a substantial risk to inmate health or safety may be found free from liability if [she] responded reasonably to the risk, even if the harm ultimately was not averted."); Coward, No. 7:20CV00702, 2022 WL 1018407, at *7 (W.D. Va. Apr. 5, 2022) ("[A] state 'is not constitutionally obligated, much as it may be desired by inmates, to construct a perfect plan for dental care that exceeds what the average reasonable person would expect or avail herself of in life outside the prison walls . . . . Common experience indicates that the great majority of . . . prisoners would not in freedom or on parole enjoy the excellence in dental care which . . . [inmates] seek on their behalf.' Rather, the court must be 'governed by the principle' that a state must provide its inmates with at least 'the minimum level of [dental] care required by the Constitution.' '[T]he essential test is one of medical necessity and not one simply of desirability.'" (citations omitted)); see also Def.'s App., Ex. 1 [D.E. 34-2] at 1 (TX-V-6, providing, inter alia, "Waiting lists may be maintained, as needed").

Finally, plaintiff does not adduce competent summary judgment evidence to rebut defendant's declarations pertinent to her subjective state of mind – that plaintiff is "just another

21

inmate" to defendant, and that she "had no desire to cause [him] any harm or deny him any care." Def.'s App., Ex. 2, Tucker Decl. [D.E. 34-4] at ¶8.

In sum, plaintiff fails to demonstrate that defendant knew of and disregarded his serious medical needs, Scinto, 841 F.3d at 225; Jackson, 775 F.3d at 178, recognized her "actions were insufficient to mitigate the risk of harm," Iko, 535 F.3d at 241 (quotation marks and citation omitted); see Farmer, 511 U.S. at 837, or acted with the requisite culpable state of mind, Strickler, 989 F.2d at 1379; see King v. Riley, 76 F.4th 259, 269 (4th Cir. 2023) ("At summary judgment, a plaintiff must identify evidence that each individual defendant acted (or failed to act) with a culpable state of mind." (citation omitted)). Defendant's actions do not "shock the conscience," cf. Miltier, 896 F.2d at 851, and plaintiff has shown, at most, defendant's mere negligence as to her role in the delays of his dental care, see Farmer, 511 U.S. at 835; Grayson, 195 F.3d at 695.

After viewing the record evidence and the reasonable inferences in the light most favorable to plaintiff, Scott, 550 U.S. at 378, defendant has shown the absence of a genuine issue of material fact as to plaintiff's Eighth Amendment deliberate indifference claims, Celotex, 477 U.S. at 325, whereas plaintiff fails to "come forward with specific facts showing that there is a genuine issue for trial," Matsushita, 475 U.S. at 587 (emphasis and quotation omitted). Thus, defendant is entitled to summary judgment on plaintiff's claims. See Anderson, 477 U.S. at 249.

Alternatively, because she is a government official, defendant is entitled to qualified immunity from civil damages so long as her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Thus, defendant is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right

at issue was not clearly established at the time of the official's alleged misconduct.   See Pearson v. Callahan, 555 U.S. 223, 236 (2009).   "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (alterations and quotations omitted).

A reasonable official in defendant's position would not have recognized that her actions – twice marking plaintiff "unavailable" for hygiene appointments and rescheduling him for later dates, once marking him as a "no show," thus requiring him to submit a sick call request for a new appointment, and purportedly informing plaintiff during a hygiene appointment he had cavities and telling him he would be placed on a waitlist for other outstanding dental issues to be addressed by other providers – violated plaintiff's clearly established rights.   See id. at 743 ("When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" (citation omitted)); see also Malley v. Briggs, 475 U.S. 335, 341 (1986) ("The Harlow standard is specifically designed to . . . permit the resolution of many insubstantial claims on summary judgment . . . .'").   Thus, defendant likewise is entitled to qualified immunity.

Conclusion:

For the above reasons, the court: GRANTS defendant's motion to seal [D.E. 36]; GRANTS defendant's motion for summary judgment [D.E. 31]; and DIRECTS the clerk to close the case.

SO ORDERED this 25th day of September, 2024.

Richard E Myers II

RICHARD E. MYERS II
Chief United States District Judge

23